O-SO-WHITE PRODUCTS CO. *v.* RICHARDS MANFG. CO.

LICENSES—CORPORATIONS—BLUE SKY LAW—EQUITY SHOULD NOT ENFORCE CONTRACT MADE IN VIOLATION OF PENAL STATUTE.

A decree of the court below denying specific performance of a contract to exchange certain shares of plaintiff's corporate stock for the conveyance to it of a warehouse, is affirmed by an equally divided court, on the ground that the proposed transfer of stock would be in violation of the blue sky law, a penal statute (Act No. 220, Pub. Acts 1923), because unauthorized by the securities commission.

Appeal from superior court of Grand Rapids; Verdier (Leonard D.), J.   Submitted October 8, 1926. (Docket No. 49.)   Decided January 3, 1927.   Submitted on rehearing April 5, 1927.   Former opinion reversed May 3, 1927.

Appeal and Error, 4 C. J. § 3113; Licenses, 37 C. J. § 171 (Anno); 15 A. L. R. 262; 24 A. L. R. 523; 27 A. L. R. 1169; 30 A. L. R. 1331; 40 A. L. R. 1014; 2 R. C. L. Supp. 416; 4 R. C. L. Supp. 490; 5 R. C. L. Supp. 412; 6 R. C. L. Supp. 454.

Bill by the O-So-White Products Company against the Richards Manufacturing Company for specific performance of a land contract. Defendant filed a cross-bill to rescind the contract. From a decree for defendant, plaintiff appeals. Affirmed by an equally divided court.

*Corwin, Norcross & Cook,* for plaintiff.

*Grant Sims,* for defendant.

## ON REHEARING.

BIRD, J. A rehearing has been had in this matter. See 237 Mich. 310. It was urged again by counsel that defendant was excused for refusing to go forward with the contract because the securities commission had not authorized the sale of the new stock. In order that the deal might be promptly closed according to the terms of the contract, Mr. Donovan, president of plaintiff, allowed the company to use his old stock to deliver to defendant as the new stock had not yet been issued. No criticism is made of the validity of the old stock. It was pronounced all right by President Richards and accepted. The new stock was subsequently issued and submitted to the commission and it authorized plaintiff to solicit purchasers for the new stock and submit the bids to the commission. The commission knew that 51 per cent. of the new stock was going to Donovan. But why discuss the validity of the new stock? Defendant had no new stock, it received old stock in payment of its deal. The defendant company had no interest in the new stock when this deal was closed. If it had no interest in the new stock it has no right to complain of its invalidity because a sale was not authorized by the commission.

Complaint is also made that defendant was entitled to its increase in new stock. That is another ques-

tion outside of this litigation. If that be true, defendant can get its rights in that respect in another proceeding. Another reason why this question should not be considered is because it was not raised in the court below.

The rehearing did not persuade the writer that any change should be made in our previous conclusion. The decree should be reversed, with costs of the proceedings to plaintiff.

SHARPE, C. J., and WIEST and MCDONALD, JJ., concurred with BIRD, J.

FELLOWS, J. If the contract before us were one between Charles Donovan and defendant, the opinion of my Brother Bird would be unassailable. Donovan as owner of stock, in an isolated transaction, could sell or contract to sell his own stock. Act No. 220, Pub. Acts 1923, § 5 (*c*); *Edward* v. *Ioor,* 205 Mich. 617 (15 A. L. R. 256); *Dows* v. *Schuh,* 206 Mich. 133; *Dursum* v. *Benedict,* 209 Mich. 115. But such is not the contract before us. By the contract before us, and the one for which specific performance is sought, the plaintiff corporation agreed to transfer 1,200 shares of its stock to defendant corporation in consideration of the transfer of the building. Neither at the date of this contract nor at any other time before the trial of this case had the stock of plaintiff company been accepted for filing by the commission. The most that appears in the record is a transcript of a hearing before the commission nearly a month after the date of the contract at which such acceptance for filing was not granted, but plaintiff was given the right to take subscriptions and submit the same to the commission for approval. No such subscriptions were ever submitted to or approved by the commission. The transaction was a sale. Section 2 (*d*) of the act provides:

"The term 'sale' or 'sell' shall include an agreement to transfer an interest in securities, and an exchange."

The contract for which specific performance is sought is one made in violation of the terms of a penal statute, and is at least voidable at the option of the defendant.    *Edward* v. *Ioor, supra; Joslin* v. *Noret,* 224 Mich. 240; *Farm Products Co.* v. *Jordan,* 229 Mich. 235; *Noll* v. *Woods,* 231 Mich. 224; *Coe* v. *Elevator Co.,* 236 Mich. 34.    Indeed section 20 of the act provides:

"Every sale or contract for sale of any security, not accepted for filing under this act or made contrary to any order of the commission, shall be voidable at the election of the purchaser."

In *Farm Products Co.* v. *Jordan, supra,* which was an action at law, it was said:

"By the express and unambiguous terms of section 4 of the act when plaintiff negotiated with and sold its treasury stock to defendant it became a domestic investment company for the purposes of the act. When it sold this stock to defendant it made an unlawful sale, one in violation of the provisions of section 14 of the act."

I do not think a court of equity should specifically enforce a contract made in violation of a penal statute of the State.    In my judgment the decree should be affirmed, with costs of this court.

SNOW, STEERE, and CLARK, JJ., concurred with FELLOWS, J.